UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| MATTHEW MARTINEZ, <br><br> Plaintiff, <br><br> v. <br><br> TORTOISE ACQUISITION CORP., VINCENT T. CUBBAGE, STEPHEN PANG, ANDREW J. OREKAR, FRANK M. SEMPLE, and SIDNEY L. TASSIN, <br><br> Defendants. | Case No._____ <br><br> **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> JURY TRIAL DEMANDED |

---

Plaintiff Matthew Martinez ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE AND SUMMARY OF THE ACTION

1. This is an action brought by Plaintiff against Tortoise Acquisition Corp. ("Tortoise" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Tortoise will combine with privately held Hyliion Inc., through SHLL Merger Sub Inc. ("Merger Sub") (the "Proposed Transaction").

2. On June 19, 2020, Tortoise and Hyliion issued a joint press release announcing that Tortoise and Hyliion had entered into a Business Combination Agreement and Plan of

Reorganization dated June 18, 2020 (the "Merger Agreement"). Under the terms of the Merger Agreement, Merger Sub will merge with and into Hyliion, with Hyliion surviving the merger as a wholly owned subsidiary of Tortoise. At the effective time of the merger each share of Hyliion common stock issued and outstanding will be canceled and converted into the right to receive the number of shares of Class A Common Stock equal to the Exchange Ratio.[1]

3. Upon closing of the Proposed Transaction, the combined company will be named Hyliion Holdings Corp. and remain on the New York Stock Exchange under the new ticker symbol "HYLN." The pro forma implied market capitalization of the combined company is over $1.5 billion, at the $10.00 per share PIPE subscription price and assuming no public stockholders of Tortoise exercise their redemption rights. The Company will receive $560 million of proceeds from an upsized $325 million PIPE, along with cash held in trust assuming no public stockholders of Tortoise exercise their redemption rights at closing. Upon completion of the Proposed Transaction: (i) Tortoise's public stockholders (other than the initial stockholders) will own approximately 14.39% of the combined company, (ii) PIPE investors will own approximately 19.03%; (iii) the initial stockholders who held Class B Common Stock ("Founder Shares") prior to Tortoise's initial public offering ("IPO") in March 2019 will own approximately 4.71%; and (iv) current investors in Hyliion will own approximately 61.87%.

---

[1] The Proxy Statement defines "Exchange Ratio" as:

> the quotient obtained by dividing (a) 100,000,000 by (b) the total number of shares of Hyliion Common Stock outstanding immediately prior to the Effective Time, expressed on a fully-diluted and as converted to Hyliion Common Stock basis, and including, without limitation or duplication, the number of shares of Hyliion Common Stock issuable upon conversion of the Hyliion Preferred Stock and Hyliion Convertible Notes pursuant to the Business Combination Agreement, and the number of shares of Hyliion Common Stock subject to unexpired, issued and outstanding Hyliion Options and Hyliion Options that Hyliion has committed to grant but has not yet granted as of immediately prior to the Effective Time.

4. On September 8, 2020, Tortoise filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. As set forth below, the Proxy Statement, which recommends that Tortoise stockholders vote in favor of the Proposed Transaction, omits material information, which renders the Proxy Statement false and misleading. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

5. In short, unless remedied, Tortoise's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting decision on the Proposed Transaction. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District. Tortoise's common stock trades on the New York Stock Exchange which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

9. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Tortoise.

10. Defendant Tortoise is a Delaware corporation with its principal executive offices located at 5100 W. 115th Place, Leawood, Kansas 66211. The Company is a special purpose acquisition company formed for the purpose of effecting a merger, stock exchange, acquisition, reorganization or similar business combination with one or more businesses. Tortoise's common stock trades on the New York Stock Exchange under the ticker symbol "SHLL."

11. Defendant Vincent T. Cubbage ("Cubbage") has served as the Company's Chief Executive Officer ("CEO"), President and director since November 2018 and as Chairman of the Board since March 2019.

12. Defendant Stephen Pang ("Pang") has served as a director of the Company since March 2019 and as the Company's Chief Financial Officer since January 2020.

13. Defendant Andrew J. Orekar ("Orekar") has served as a director of the Company since March 2019.

14. Defendant Frank M. Semple ("Semple") has served as a director of the Company since March 2019.

15. Defendant Sidney L. Tassin ("Tassin") has served as a director of the Company since March 2019.

16. Defendants identified in paragraphs 11 – 15 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

17. Merger Sub is a Delaware corporation and a wholly owned subsidiary of Tortoise.

18. Hyliion is a Delaware corporation with its principal executive offices located at 1202 BMC Drive, Suite 100, Cedar Park, Texas 78613. Hyliion designs, develops and sells electrified powertrain solutions that can be installed on Class 8 trucks from most major commercial vehicle original equipment manufacturers ("OEMs").

**SUBSTANTIVE ALLEGATIONS**

**Background of the Company and the Proposed Transaction**

19. Tortoise is a special purpose acquisition company formed in November 2018 for the purpose of effecting a merger, capital stock exchange, asset acquisition, stock purchase, reorganization or similar business combination involving Tortoise and one or more businesses. Tortoise's expertise spans across the entire energy and infrastructure value chain. Its strategy is to combine with a company to take advantage of the global opportunities created by the energy transition including clean energy generation and storage, alternative fuels and transportation, technological advances and changes in energy policies. On March 4, 2019, Tortoise announced the closing of its $233,009,170 IPO, including a partial exercise of the underwriters' option to purchase additional units.

20. Hyliion designs, develops and sells electrified powertrain solutions that can be installed on Class 8 trucks from most major commercial vehicle OEMs. Hyliion's mission is to be the leading provider of electrified powertrain solutions for the commercial vehicle industry. Its goal is to reduce the carbon intensity and the greenhouse gas emissions of the transportation sector by providing electrified powertrain solutions for Class 8 commercial vehicles at the lowest total cost of ownership. Hyliion's solutions utilize its proprietary battery systems, control software and data analytics, combined with fully integrated electric motors and power electronics, to produce electrified powertrain systems that either augment, in the case of Hyliion's hybrid electric powertrain systems, or fully replace, in the case of the fully electric Hypertruck Electric Range

Extender system, traditional diesel or natural gas fueled powertrains and improve their performance.

21.  On June 19, 2020, Tortoise and Hyliion issued a joint press release announcing the Proposed Transaction. The press release states, in relevant part:

> AUSTIN, Texas & LEAWOOD, Kan.--Hyliion Inc., a leader in electrified powertrain solutions for Class 8 commercial vehicles, announced today it intends to merge with Tortoise Acquisition Corp. (NYSE: SHLL), a publicly traded special purpose acquisition company with a strategic focus on the energy sector and decarbonizing commercial transportation in North America. Upon the closing of the transaction, the combined entity will be named Hyliion Holdings Corp. and remain on the New York Stock Exchange (NYSE) under the new ticker symbol "HYLN."
>
> The merger will drive Hyliion's corporate expansion and further the development and commercialization of its powertrain solutions, with the support of the company's robust network of industry partners.
>
> "We are building solutions that are available today and address the immediate needs of today's trucking fleets," said Thomas Healy, CEO and founder of Hyliion. "Hyliion's solutions were specifically developed to utilize existing infrastructure in an effort to support rapid technology deployment. Our mission is to enable our fleet customers to quickly realize lower carbon emissions and significantly lower cost of ownership benefits provided by our technology."
>
> Founded in 2015, Hyliion has established itself as an industry leader in Class 8 truck electrification with its hybrid and fully electric powertrain solutions capable of achieving a net carbon negative footprint.
>
> "Over the past 15 months since our IPO, we have evaluated more than 200 companies looking for the ideal opportunity where our expertise and capital could be the catalyst needed to unlock the full potential of a high-growth business," said Vince Cubbage, CEO and chairman of Tortoise Acquisition Corp. "We found that exceptional company with Hyliion—with a market-disruptive business plan, transformational product, and remarkable founder and CEO. We are honored that they made us a part of their team and are looking forward to helping them deploy their sustainable, electrified trucking solutions to significantly reduce emissions and contribute to a cleaner energy future."
>
> Healy will continue as CEO of the combined company, overseeing the implementation of Hyliion's corporate strategy. He is joined by Hyliion's executive team: Patrick Sexton, CTO, Greg Van de Vere, CFO, and Michael Camp, COO. The company's board will include existing members from Hyliion and Tortoise

Acquisition Corp., including Cubbage, Stephen Pang, managing director and portfolio manager at Tortoise Capital Advisors, Ed Olkkola, managing director at Teakwood Capital, Howard Jenkins, former chairman and CEO of Publix Super Markets, and others to be added at a later date.

**Transaction Overview**

The pro forma implied market capitalization of the combined company is over $1.5 billion, at the $10.00 per share PIPE subscription price and assuming no public shareholders of Tortoise Acquisition Corp. exercise their redemption rights. The company will receive $560 million of proceeds from an upsized $325 million PIPE, along with cash held in trust assuming no public shareholders of Tortoise Acquisition Corp. exercise their redemption rights at closing.

These funds will be used to accelerate product commercialization, product production, operational growth and for general corporate purposes. The boards of directors of both Tortoise Acquisition Corp. and Hyliion unanimously approved the transaction. Completion of the proposed transaction is subject to customary closing conditions and is expected to be completed around the end of the third quarter of 2020. All existing shareholders and investors will continue to hold their equity ownership, including Dana, Sensata Technologies, Sumitomo Corporation of Americas, Axioma Ventures, FJ Management, New Era Capital Partners, Colle Capital Partners and others.

Marathon Capital is serving as exclusive strategic and financial advisor, and Cooley LLP and Wick Phillips LLP are serving as legal advisors to Hyliion. Barclays Capital Inc. served as exclusive M&A advisor to Tortoise Acquisition Corp. Barclays Capital Inc. and Goldman Sachs & Co. LLC served as joint-placement agents on the PIPE offering. Vinson & Elkins L.L.P. is serving as legal advisor to Tortoise Acquisition Corp.

**The Proxy Statement Contains Material Misstatements or Omissions**

22. The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Tortoise's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction.

23. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Tortoise's financial advisor, Barclays Capital Inc.'s ("Barclays"), potential

conflicts of interest and financial analyses; and (ii) the background of the Proposed Transaction. Accordingly, Tortoise stockholders are being asked to make a voting decision in connection with the Proposed Transaction without all material information at their disposal.

***Material Omissions Concerning the Company's Financial Advisor's Potential Conflicts of Interest and Financial Analyses***

24.     The Proxy Statement fails to disclose material information concerning the Company's financial advisor's potential conflicts of interest.

25.     For example, the Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by the Company's financial advisor. According to the Proxy Statement, Barclays served as Tortoise's exclusive financial advisor and lead private placement agent in connection with the Proposed Transaction. The Proxy Statement fails, however, to disclose: (i) the amount of compensation Barclays has received or will receive in connection with its engagement; (ii) the amount of Barclays' compensation that is contingent upon the consummation of the Proposed Transaction; and (iii) the details of any past services Barclays has performed for any parties to the Merger Agreement or their affiliates, including the timing and nature of such services as well as the amount of compensation received by Barclays for providing such services.

26.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

27.     Moreover, the Proxy Statement fails to disclose material information concerning any financial analysis prepared by Barclays and considered and relied upon by the Board in connection with the Individual Defendants' decision to approve the Proposed Transaction.

28. Similarly, the Proxy Statement fails to disclose material information concerning Tortoise management's financial analyses. The Proxy Statement sets forth:

> In approving the business combination, the TortoiseCorp Board determined not to obtain a fairness opinion. The officers and directors of TortoiseCorp have substantial experience in evaluating the operating and financial merits of companies from a wide range of industries and concluded that their experience and background, together with experience and sector expertise of Barclays, enabled them to make the necessary analyses and determinations regarding the business combination.

Proxy Statement at 108. The Proxy Statement, however, fails to disclose any financial analysis prepared by Tortoise management and considered and relied upon by the Board in connection with the Individual Defendants' decision to approve the Proposed Transaction

29. The omission of this information renders the statements in the "Background of the Business Combination" and "TortoiseCorp Board's Reasons for the Approval of the Business Combination" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background of the Proposed Transaction***

30. The Proxy Statement fails to disclose material information concerning the background process leading to the Proposed Transaction.

31. For example, according to the Proxy Statement:

> By March 2020, TortoiseCorp had engaged in due diligence and discussions directly with the senior executives, stockholders or sponsors of 13 alternative target opportunities (the "Other Potential Acquisitions"), three of which were in the renewable and lower-emissions power generation sector, two of which were high-growth technology companies participating in the sustainability sector and eight of which were in the midstream or environmental services sector. In several cases, TortoiseCorp presented term sheets or illustrative transaction structures (or similar documentation) describing the structure or principal terms of potential business combinations.

*Id.* at 102.  Critically, the Proxy Statement fails to disclose whether the Company entered into confidentiality agreements including standstill agreements with any of the potential acquisition targets, and if so, whether any of the standstill provisions are still in effect and/or are "don't ask, don't waive" standstill provisions.  The Proxy Statement further fails to disclose the details of the principle term sheets of a potential business combination presented to or received from other potential acquisition targets.

32. This information is material to Tortoise's stockholders as a reasonable Tortoise stockholder would find it material and important to their voting decision to know whether or not parties that had previously been interested in a potential combination are now foreclosed from submitting superior proposals.

33. Additionally, according to the Proxy Statement it is anticipated that defendants Cubbage and Pang will continue as directors of the combined company after the close of the Proposed Transaction.  *See id.* at 113.  The Proxy Statement, however, fails to disclose the specific details of all employment and retention-related discussions and negotiations that occurred between Hyliion and Tortoise executive officers and directors, including who participated in all such communications, when they occurred and their content.  The Proxy Statement further fails to disclose whether any of Tortoise's proposals or indications of interest mentioned management retention or directorship in the combined company.

34. Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders.  This information is necessary for Tortoise's stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's

stockholders.

35. The omission of this material information renders the statements in the "Background of the Business Combination" and "Interests of Certain Persons in the Business Combination" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

36. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other Tortoise stockholders will be unable to make an informed voting decision on the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

37. Plaintiff repeats all previous allegations as if set forth in full.

38. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

39. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information concerning Tortoise's financial

advisor's potential conflicts of interest, the financial analyses relied upon by the Board, and the background of the Proposed Transaction. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

40. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

41. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

42. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

43. Plaintiff repeats all previous allegations as if set forth in full.

44. The Individual Defendants acted as controlling persons of Tortoise within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Tortoise, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

45. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to

and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

46. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

47. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

48. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

49. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Tortoise's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Tortoise, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Tortoise stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: September 16, 2020

**WEISSLAW LLP**

By _____
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, New York 10036
Telephone: (212) 682-3025
Facsimile: (212) 682-3010
Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*